Mary Zelma **ASSEO, Regional Director for Region 24 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,**

v.

**BULTMAN ENTERPRISES, INC. d/b/a Le Rendezvous Restaurant, Respondent.**

Civil No. 95–1907 (SEC).

United States District Court, D. Puerto Rico.

Dec. 7, 1995.

Efraín Rivera–Vega, National Labor Relations Board, Hato Rey, PR, for Petitioner.

Anibal Lugo–Miranda, Shapiro & Lugo, San Juan, PR, for Respondent.

## OPINION AND ORDER

CASELLAS, District Judge.

This case is before the Court upon a petition for injunctive relief filed on July 20, 1995 by the Regional Director for the Twenty–Fourth Region of the National Labor Relations Board ("the Board"), pursuant to Section 10(j) of the National Labor Relations Act, as amended (61 Stat. 149; 29 U.S.C. § 160(j)) ("the Act"). The injunctive relief requested is to be in effect until final disposition of the matters involved herein, now pending before the Board on complaint by the General Counsel, based on a charge and amended charge filed by Union Gastronomica de Puerto Rico Local 610, HEREIU, AFL–CIO ("the Union"). The Union claims that Bultman Enterprises d/b/a Le Rendezvous Restaurant ("Respondent") has engaged in, and is engaging in, unfair labor practices in violation of Section 8(a)(1), (3) and (5) of the Act (29 U.S.C. § 158(a)(1), (3) and (5)), which sections prohibit an employer from interfering with, restraining or coercing employees in the exercise of their right to engage in union and/or concerted activities; from discriminating against employees because of their membership in a labor organization; and from failing or refusing to bargain collectively in good faith with the representative of its employees in an appropriate unit.

The charge in Case No. 24–CA–7129 was filed by the Union on February 13, 1995. It was subsequently amended on April 28, 1995. Following its investigation of the charges, the Board issued a Complaint and Notice of Hearing pursuant to Section 10(b) of the Act, alleging that Respondent violated the National Labor Relations Act as set forth above. A hearing was held on these claims before Administrative Law Judge Benjamin Schlesinger in San Juan, Puerto Rico from August 28 to 30, 1995. The ALJ's decision is pending.

On motion by the Board, this Court granted leave to submit affidavits and other properly supported documentary evidence in lieu of a full evidentiary hearing on its petition for interim relief. *See Aguayo v. Tomco Carburetor Co.*, 853 F.2d 744, 750 (9th Cir. 1988); *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir.1987); *Fuchs v. Hood Industries, Inc.*, 590 F.2d 395, 397 (1st Cir.1979). The parties have therefore submitted the case on the transcript and exhibits presented at the administrative hearing, and on supplemental affidavits submitted to the Court.

### Factual Background

Respondent, a Puerto Rico corporation, is engaged in the operation of a restaurant in the Ambassador Plaza Hotel & Casino, a Radisson Plaza Hotel ("the Hotel") located in Condado, Puerto Rico, providing food, beverages and related services. Specifically, the Board alleges that on or about November 30, 1994 Respondent leased and/or subcontracted the food and beverage outlets of the Hotel known as the Howard Johnson's Restaurant and Ice Cream Parlor, and since then has continued to operate said outlets in basically unchanged form.

In essence, the Board claims that Respondent threatened its employees with discharge due to their status as union members; refused to consider for employment and/or failed and refused to hire several employees because they were members of the Union, in order to discourage these employees from engaging in union activity; unilaterally reduced wages and otherwise modified the terms and conditions of employment of its employees, without prior notice to the Union and without affording the Union an opportunity to bargain with respect to these matters; refused to recognize and bargain with the Union as the exclusive collective-bargaining representative of the unit; and refused to furnish the Union with information relevant to its function as collective-bargaining representative.

### Standards under Section 10(j)

Section 10(j) of the NLRA authorizes the NLRB to seek, and the United States district courts to grant, interim relief pending the NLRB's resolution of claims of

unfair labor practices. *Efraín Rivera–Vega v. ConAgra, Inc.,* 70 F.3d 153, 157–158 (1st Cir.1995). In considering a petition for interim relief under 10(j), our inquiry is limited to (1) whether the NLRB has shown "reasonable cause" to believe that the employer has committed the unfair labor practices alleged, and (2) whether injunctive relief is "just and proper." *Id.* at 157–158; *Asseo v. Centro Médico Del Turabo, Inc.,* 900 F.2d 445, 450 (1st Cir.1990). In considering the Board's petition for relief, we need not determine whether an unfair labor practice actually occurred; rather our role is limited to deciding only whether the NLRB's position is "fairly supported by the evidence." *See ConAgra, Inc.,* 70 F.3d at 158. Similarly, we are not called upon to resolve contested issues of fact, but are to defer instead to the NLRB's version of the facts, as long as they are "within the range of rationality." *Id. See also, Maram v. Universidad Interamericana de Puerto Rico,* 722 F.2d 953, 958 (1st Cir. 1983).

### Findings of Fact

Since at least 1991, the Union has been the exclusive collective bargaining representative of a unit of food and beverage employees at the Hotel. The Union has been recognized as such by the Hotel, as embodied in successive collective bargaining agreements, the most recent of which was effective from June 1, 1991 to May 31, 1994. About May 12, 1994, the Hotel and the Union commenced bargaining for a new collective bargaining agreement. On May 12 and October 4, 1994, the Hotel informed the Union of its intention to contract out the operation of the restaurant at the Hotel. Although the parties included this topic in their negotiations, no agreement was reached regarding this matter. Accordingly, on November 18, 1994, the Hotel notified the Union that effective November 30, 1994, it would be providing the food and beverage services by means of a new concessionaire, Bultman Enterprises. On November 23, 1994, employees were informed that the Hotel would be closing its food service operations, and a concession would be given to Respondent. The notification letter invited them to apply for employment with the concessionaire, whose repre-

sentative would be receiving applications and interviewing interested candidates beginning November 28, 1994. Notwithstanding this invitation, at least 36 of those former food and beverage employees who did submit applications for employment with Respondent never even got an interview.

As these events unfolded, several supervisors told employees that it was a shame that "such good employees would be left out on the street" because Respondent did not want the Union. These comments were made by Dining Room Supervisor José Cruz in August and November of 1994 and by Food and Beverage Manager Noel García on several occasions. These sentiments were echoed by Supervisors Moisés Brignoni and Roberto Burgos.

At some point prior to taking over the operations of the restaurant on November 30, 1994, Respondent prepared and submitted to the Hotel a confidential memorandum describing the manner in which the management transition of food and beverage operations from the Hotel to Respondent would be accomplished. The memo outlines several specific recommendations on how to deal with employees and personnel related matters, including language on how to maintain a non-union environment even while retaining a number of current union employees.

On November 30, 1994, Respondent signed a "Concession Agreement" with the Hotel, whereby the Hotel granted Respondent a concession of its restaurant and ice cream parlor for a period of five years, with an additional five-year option, at the Hotel's discretion. On December 1, 1994, Respondent began operating the restaurant, providing only food service to the Hotel itself until December 12th, when it opened to the general public. The operations of the restaurant are essentially the same as they were under Hotel management. Respondent offers the same services, to the same clients, at the same location, with the same equipment. Respondent also retained six of the eight supervisors of its predecessor, and hired three new supervisors. Respondent did make offers of employment to twelve (12) out of a total of fifty-five (55) former union em-

ployees of the Food and Beverage department, subject to a pay cut in their hourly wages.

Upon learning that Respondent was to take over the operation of the restaurant at the Hotel, the Union requested that Respondent recognize the Union as the exclusive collective bargaining representative of the restaurant employees. The Union included with its request, a list of employees covered by the agreement between it and the Hotel "who should maintain their jobs." Respondent rejected the Union's claim. Respondent specifically refused to recognize the Union as the exclusive bargaining representative, stating that as an independent concessionaire, the new management had hired its own employees to operate its business.

Finally, by letter of March 14, 1995, Respondent refused to provide the Union with requested information related to its employees, as well as a copy of the contract or lease between Respondent and the Hotel.

### Respondent's Failure To Hire Union Employees

Section 7 of the Act guarantees employees "the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection ..." Section 8(a)(1) in turn protects these rights by making it an unfair labor practice for an employer to interfere with, restrain or coerce employees in the exercise of the rights guaranteed them by Section 7 of the Act. Section 8(a)(3) of the Act prohibits "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization."

The Regional Director argues that Respondent is a successor employer, and that as such, although the law grants it the freedom to hire its own workforce, it may not discriminate against union employees in its hiring. Compare Elastic Stop Nut Div. of Harvard Ind. v. NLRB, 921 F.2d 1275, 1279 (D.C.Cir.1990) (citing NLRB v. Burns International Security Services, Inc., 406 U.S. 272, 287–88, 92 S.Ct. 1571, 1582–83, 32 L.Ed.2d 61 (1972)) with Fall River Dyeing and Finishing Corp. v. NLRB, 482 U.S. 27, 40, 107 S.Ct. 2225, 2234, 96 L.Ed.2d 22 (1987). It is of course well-established that a successor employer violates Section 8(a)(3) and (1) of the Act when it refuses to hire its predecessor's employees because of their union affiliation. NLRB v. Horizon's Hotel Corp., 49 F.3d 795, 803–04 (1st Cir.1995); Kallmann v. NLRB, 640 F.2d 1094, 1099–101 (9th Cir.1981); Packing House & Industrial Services, Inc. v. NLRB, 590 F.2d 688, 695–97 (8th Cir.1978); NLRB v. Foodway of El Paso, 496 F.2d 117, 119 (5th Cir.1974).

The Regional Director urges this Court to find reasonable cause to believe that Respondent discriminatorily refused to consider for employment and to hire its predecessor's employees in violation of Section 8(a)(1) and (3) of the Act. Her argument is based, at least in part, on statements made by Dining Room Supervisor José Cruz, Kitchen Manager Moisés Brignoni, Purchasing Agent Roberto Burgos, Food and Beverage Manager Noel García and Kitchen Supervisor Melvin Arroyo, to the effect that unit employees would be left without a job because of their membership in the Union. According to the Regional Director, these statements reflect Respondent's motivation not to hire union-affiliated employees.

In addition, the Regional Director argues that Respondent's discriminatory animus against union employees is further evidenced by the memorandum prepared by Respondent's president Russell Bultman titled "Critical Path Memorandum", which describes Respondent's proposed start-up plan for the concession, including its intention to retain only a minimal number of then-current employees in a "non-union" environment. See Kessel Food Markets, Inc., 287 NLRB 426, 429, 1987 WL 90101 (1987) (When a potential successor states its intention to operate "non-union" before it completes its hiring process, it is an indicia of a discriminatory hiring motive.), enforced by 868 F.2d 881 (6th Cir. 1989), cert. denied, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989). The Board further notes that while this memorandum mentions that union employees might be "unhappy" with a 30 to 40% reduction in wages, any

defense based on that presumed fact would be unavailing to Respondent in this case. *See Sierra Realty Corp.*, 317 NLRB No. 117, slip op. at 3, 1995 WL 353122 (June 9, 1995) (where predecessor employees did not place higher wages as condition to work for successor, successor's refusal to offer jobs to predecessor's employees because they previously enjoyed such higher union wages is considered indicia of anti-union animus.)

Finally, the Regional Director points to the fact that while Respondent retained six of the predecessor's eight managerial and supervisory employees, it did not interview any of the predecessor's 55 union employees, and made offers of employment to only twelve (12) of those. *See NLRB v. Horizons Hotel*, 49 F.3d at 805 (noting the absence of interviews with predecessor's employees as indicative of the fact that the former employees' union affiliation was the substantial or motivating factor in the employer's refusal to hire them.)

■■■ In response to the Board's charges, Respondent highlights the fact that it made offers of employment to twelve (12) of the predecessor's union employees, in an effort to rebut the Board's claims that it refused to hire those employees based on their status as union members. This argument is of little weight, for as pointed out by the Board, a successor employer violates Section 8(a)(1) and 8(a)(3) of the Act whenever it establishes a predetermined quota to limit its hiring of the predecessor's employees to a non-majority level in order to make it appear that it is not a successor employer. *See El Mundo Corp.*, 301 NLRB 351, 367, 1991 WL 17910 (1991). In this case, the "critical path" memorandum, drafted prior to the relevant hiring dates, expressly contemplates that only 10 to 12 of predecessor's union employees would be hired. Moreover, although Respondent introduced evidence at the hearing before the ALJ of at least three hirings from other hotels in the island known to be organized, such evidence, although clearly entitled to some weight, involves applications for employment received, and offers of employment made well after December 1, 1994, the time when Respondent first took over the restaurant operation.[1] Consequently, such evidence is of limited value when judging the motivation behind Respondent's refusal to hire union employees at that time.

■■■ Respondent also argues that the reason that most of the employees were not considered for employment, or even interviewed, was because of their poor performance and attitude problems.[2] According to Respondent, having spent three months in close contact with the employees while evaluating the food and beverage operation, Bultman had first-hand knowledge of their abilities. Consequently, the reasoning goes, an interview was totally unnecessary. Although not entirely devoid of merit, this argument merely presents factual issues which must be resolved in the underlying administrative proceeding on the basis of testimony and the determinations of credibility made by the ALJ. As noted above, we are called to determine *only* whether the Regional Director's position is fairly supported by the evidence, and not whether an unfair labor practice actually occurred. Given the evidence set forth above, this Court finds that there is reasonable cause to believe that Respondent deliberately discriminated against the predecessor's union employees by failing and refusing to hire them in order to avoid having a majority of union employees, and thereby avoid the obligation to recognize and bargain with the Union as the unit's exclusive collective bargaining representative. Such conduct constitutes a violation of Section 8(a)(3) and (1) of the Act. *El Mundo, Corp.*, 301 NLRB 351, 1991 WL 17910 (1991); *NLRB v. Horizons Hotel*, supra.

### Respondent's refusal to bargain with the Union

■■■ Section 8(a)(5) of the Act, 29 U.S.C. § 158(a)(5), provides that it is an unfair labor

1. The first application submitted is dated June 13, 1995, the second is undated, and the third is dated January 26, 1995.

2. Pursuant to a professional services agreement between the Hotel and Bultman Enterprises, Russell Bultman and his brother Randal evaluated the food and beverage operation of the Hotel for three months prior to obtaining the concession.

practice for an employer to "refuse to bargain collectively with the representatives of its employees." By the same token, where an employer violates § 8(a)(5) of the Act by refusing to bargain collectively, it necessarily violates § 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1). *See NLRB v. Horizons Hotel Corp.*, 49 F.3d at 806. Under § 8(a)(5), an employer is obligated to bargain with the Union representing its predecessor's employees if: (1) the new employer is a successor to the old ... and (2) a majority of the successor's employees previously were employed by the predecessor. *Asseo v. Centro Médico Del Turabo*, 900 F.2d at 450–51. If the two criteria are met, a rebuttable presumption of majority status arises, leading to the consequent duty to bargain in good faith. *Id.* at 451; *NLRB v. Horizons Hotel Corp.*, 49 F.3d at 806.

■ However, "where a successor employer's unlawful hiring practices preclude the possibility of a majority status in its work force, the successor violates the Act by refusing to bargain collectively with the union that had represented the predecessor's employees." *NLRB v. Horizons Hotel Corp.*, 49 F.3d at 806 (citing *Elastic Stop Nut Div. of Harvard Ind.*, 921 F.2d at 1282). The Regional Director predictably asserts that Respondent is a successor employer. In support of her contention, she specifically points to the fact that the nature of the business has remained exactly the same, at the same location, offering the same service to the same clientele. As noted above, most of the supervisors have remained in the same positions they held under the predecessor Hotel. Although the Regional Director acknowledges

that at present union employees do not have majority status in the business, she argues that this situation is the result of Respondent's discriminatory hiring practices, and therefore does not change Respondent's duty to bargain with the employees' union representative. The Regional Director's position is amply supported by the evidence on record.

■ Having found reasonable cause to believe that Respondent deliberately discriminated against the predecessor's union employees by failing and refusing to hire them in order to avoid having a majority of union employees, we are compelled to find reasonable cause to believe that Respondent violated § 8(a)(5) of the Act, as a duty to bargain with the employees' union representatives arose from Respondent's violation of § 8(a)(3).[3]

### Is the Requested Relief "Just and Proper"

· ■ The determination of whether injunctive relief is just and proper hinges upon whether the NLRB has demonstrated (1) a likelihood of success on the merits; (2) the potential for irreparable injury in the absence of relief; (3) that such injury outweighs any harm preliminary injunctive relief would inflict on the employer; and (4) that preliminary relief is in the public interest. *See ConAgra, Inc.*, 70 F.3d at 164 (citing *Pye v. Sullivan Bros.*, 38 F.3d 58, 63 (1st Cir.1994)). Having concluded that there is reasonable cause to believe that Respondent violated the Act and that there is a strong likelihood that petitioner will prevail in the Board's proceeding, we examine the Regional

---

3. The Regional Director also argues that Respondent violated Section 8(a)(5) and (1) by unilaterally changing the terms and conditions of employment in effect as of the date of Respondent's takeover of the restaurant operations at the Hotel. Ordinarily, a successor employer is free to establish the terms and conditions on which it will hire the predecessor's employees. *See NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *American Press, Inc. v. NLRB*, 833 F.2d 621 (6th Cir.1987). "Where all or substantially all of the predecessor's employees would have been retained but for the successor's unlawful discrimination however, the successor loses the right to set initial terms and conditions of employment,

and violates the Act if it unilaterally alters the predecessor's terms without first consulting the union." *U.S. Marine Corp. v. NLRB*, 944 F.2d 1305, 1320 (7th Cir.1991), *cert. denied*, 503 U.S. 936, 112 S.Ct. 1474, 117 L.Ed.2d 618. In this case, the Regional Director insists that Respondent was required to bargain with the Union before altering the existing terms and conditions of employment. Her position is fairly supported by the evidence. According to the Regional Director, by refusing to provide the Union with the requested information, Respondent further violated Section 8(a)(5). On these facts, there is reasonable cause to believe that Respondent did further violate Section 8(a)(5) in this way.

Director's request for interim relief under the "just and proper" standard.

■■■■ Petitioner's position is that the Board proceedings already underway are not sufficient to fully remedy the alleged violations to the Act. For example, the Regional Director claims that interim offers of employment and restored conditions of employment are necessary to protect the efficacy of the Board's ultimate remedy given the large potential back pay involved in this case, because such an award may be ultimately found to be unduly burdensome and unenforceable. *Kallmann v. NLRB*, 640 F.2d at 1102–03. In such circumstances, interim relief is just and proper to preserve the Board's ability to issue an enforceable restoration remedy. *See Asseo v. Centro Médico Del Turabo*, 900 F.2d at 455 (Interim injunctive relief is appropriate when the circumstances of the case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless.)

In addition, absent interim reinstatement, the affected employees will likely have found new employment and be unavailable or unwilling to return to their former jobs by the time the Board issues its final remedial order. Even those who remain willing to accept employment may be inclined to withdraw their support of the Union because of its inability to adequately represent their interests, resulting in an erosion of union support, and as a consequence, the weakening of the Union's bargaining position. *See Asseo v. Pan American Grain Co.*, 805 F.2d 23, 27–28 (1st Cir.1986). Respondent's discriminatory hiring practices, and its refusal to bargain with the Union will irreparably harm the Union's support as well as its ability to bargain effectively on behalf of the unit employees. *Id.* *See also, Silverman v. Whittal & Shon, Inc.*, 125 LRRM 2150, 2151, 1986 WL 15735 (S.D.N.Y.1986); *Schneid v. Apple Glass Co.*, 123 LRRM 2329, 2331, 1986 WL 27398 (N.D.Ill.1986).

■■■■ Respondent points out that any interim reinstatement order will entail the dismissal of the thirty or so replacement workers hired to continue the operation of the restaurant, and therefore any such interim

relief is not just or proper. While it is true that the temporary reinstatement order may result in the displacement of the temporary replacements, the First Circuit has held that such interim relief is appropriate, as the Section 7 rights of discriminated-against employees outweigh any job rights of the temporary replacement workers. *Maram v. Universidad Interamericana*, 722 F.2d at 959–60.

Furthermore, unless Respondent is ordered to bargain in good faith on an interim basis, the effectiveness of the Board's order will be greatly diminished. "An employer's unlawful refusal to bargain in good faith with its employees' duly designated bargaining representative threatens the public interest and can result in permanent injury to the employees' loyalties to their incumbent union which the Board's administrative order in due course will be unable to adequately remedy." *Rivera Vega v. ConAgra*, 876 F.Supp. 1350, 1371 (D.P.R.1995), *aff'd*, *Efraín Rivera–Vega v. ConAgra, Inc.*, 70 F.3d 153, 163 (1st Cir.1995). *See also, Asseo v. Pan American Grain Co.*, 805 F.2d at 26–27. "Nor can the Board's ultimate order make the employees whole for the deprivation, *pendente lite*, of the possible benefits of good faith collective bargaining through the representative of their choice." *ConAgra*, 876 F.Supp. at 1371. In short, absent interim relief, Respondent will be allowed to reap a double benefit from its unlawful conduct: it will be able to conduct its affairs free from the constraints of collective bargaining under unilaterally imposed terms of employment while the Board's administrative proceedings are pending; and then, upon the issuance of the Board's order, it will be able to bargain with a substantially weakened union. *See IUE v. NLRB*, 426 F.2d 1243, 1249 (D.C.Cir.1970), *cert. denied*, 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 256. In this regard, the First Circuit has held that the public interest is served by the grant of interim 10(j) injunctive relief which strengthens the bargaining process. *Asseo v. Centro Médico Del Turabo*, 900 F.2d at 455.

■■■■ Respondent urges us to deny the requested relief due to the Board's delay in

seeking the 10(j) injunction. In this case, the unfair labor practice charge was filed by the Union on February 13, 1995. It was subsequently amended on April 28, 1995. Following its investigation of the charges, the Board issued a Complaint and Notice of Hearing pursuant to Section 10(b) of the Act on April 28, 1995. The instant request for interim relief was filed on July 20, 1995. A delay by the Board in seeking interim injunctive relief does not preclude such relief *per se*, but rather is to be taken into account as it may affect the court's ability to restore the status quo ante. *Pascarell v. Vibra Screw, Inc.*, 904 F.2d 874, 881–82 (3d Cir.1990); *Aguayo v. Tomco Carburetor Co.*, 853 F.2d at 750; *Gottfried v. Frankel*, 818 F.2d 485, 495 (6th Cir.1987).

 Viewed in the light of the particular circumstances of this case, a delay of less than three months is not unreasonable. "A busy administrative agency cannot operate overnight. The very fact that it must exercise discretion, and that its decision is entitled to presumptive weight, indicate that it should have time to deliberate." *Maram v. Universidad Interamericana*, 722 F.2d at 960. *See also, ConAgra*, 876 F.Supp. at 1371 (three month delay in the investigation of the charges and two and a half month period to file for 10(j) injunctive relief not unreasonable.)

### Conclusion

In sum, there is reasonable cause to believe that Respondent has violated Sections 8(a)(1), (3) and (5) of the Act. In view of petitioner's strong likelihood of success, coupled with the potential for irreparable injury in the absence of interim relief, we find that the injunctive relief sought is just and proper. We also find that such relief not only outweighs any potential harm caused to Respondent, but that it is also in the public interest. The request for a preliminary injunction is therefore GRANTED.

WHEREFORE, it is ORDERED that pending the Board's final disposition of all matters in Case No. 24–CA–7129, Respondent Bultman Enterprises, its successors, assigns, officers, representatives, agents, servants, employees, attorneys, and all persons acting in concert or participation with it or them, be and they are hereby enjoined and restrained from:

(a) failing and refusing to consider employees for hire and/or to hire employees due to the fact that they are represented by a labor organization;

(b) threatening employees with discharge and/or job loss because of their union membership or unionized status, or because it wishes to operate its business without a union;

(c) making changes in terms and conditions of employment without prior notice to and bargaining with the Union;

(d) failing and refusing to recognize and bargain with the Union as the Section 9(a) representative of the restaurant and ice cream parlor employees;

(e) failing and refusing to supply the Union with information relevant to its function as exclusive collective-bargaining representative;

(f) in any other manner interfering, restraining, or coercing its employees in the exercise of their Section 7 rights.

2. It is further ORDERED that pending the Board's final disposition of this matter, Respondent, its successors, assigns, officers, representatives, agents, servants, employees, attorneys, and all persons acting in concert or participation with it or them, take the following affirmative action:

(a) offer immediate employment to the employees of its predecessor, the Hotel, to their former jobs, or if unavailable, to substantially equivalent positions, displacing, if necessary, any employees hired to replace them;

(b) upon the request of the Union, rescind any changes to the wages and other terms or conditions of employment of unit employees which Respondent implemented on or after December 1, 1994, and maintain the prior conditions until the parties bargain in good faith to an agreement or impasse over any proposed changes thereto;

(c) recognize, and upon request, bargain in good faith with the Union as the exclusive

collective-bargaining representative of the unit employees;

(d) upon request, promptly provide the Union with the requested information necessary and relevant for collective bargaining;

(e) post copies of the Court's Opinion and Order, in Spanish and English at Respondent's San Juan, Puerto Rico facility in all locations where employer notices to employees are customarily posted; said postings shall be maintained during the pendency of the Board proceedings free from all obstructions and defacements; and agents of the Regional Director for Region 24 of the Board shall be granted reasonable access to the employer's facility to monitor compliance with this posting requirement; and

(f) within thirty (30) days of the entry on the docket of the Court's Order, submit to the Court, with copy to the Regional Director for Region 24, a sworn affidavit from a responsible Respondent official describing with specificity the manner in which Respondent has complied with the terms of the Court's Order.

**IT IS SO ORDERED.**